| | | |
|---|---|---|
| STATE OF INDIANA ) | | IN THE ALLEN SUPERIOR COURT |
| ) SS: | | |
| COUNTY OF ALLEN ) | | CAUSE NO. 02D09-1403-CT-147 |

DATA RESEARCH AND HANDLING, INC. )
d/b/a WORKFORCE RELO )
)
          PLAINTIFF )
vs. )
)
UPSTATE ALLIANCE OF REALTORS, INC., )
UPSTATE ALLIANCE OF REALTORS MULTIPLE )
LISTING SERVICE, INC., PONE VONGPHACHANH )
INDIANA ASSOCIATION OF REALTORS, INC., and )
NATIONAL ASSOCIATION OF REALTORS, INC. )
)
          DEFENDANTS )

## PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Data Research and Handling, Inc. d/b/a Workforce Relo ("Workforce") by counsel, and for their complaint against the Defendants herein, state as follows:

### THE PARTIES

1. Plaintiff is an Indiana Corporation, doing business and headquartered in Fort Wayne, Allen County, Indiana.

2. Defendant Upstate Alliance of Realtors, Inc. ("Upstar"), is an Indiana not for profit corporation, doing business in Fort Wayne, Allen County, Indiana, and headquartered at 3404 East Dupont Road, Fort Wayne, Indiana.

3. Defendant Upstate Alliance of Realtors Multiple Listing Service, Inc. ("Upstar MLS"), is an Indiana for profit corporation, doing business in Fort Wayne, Allen County, Indiana, and headquartered at 3404 East Dupont Road, Fort Wayne, Indiana.

4. Defendant Pone Vongphachanh, is a resident of Allen County, Indiana, and at all times relevant to the controversy, was and continues to be an employee of Upstar and Upstar MLS.

4.1 Defendant Indiana Association of Realtors, Inc. ("IAR"), is an Indiana not-for-profit corporation, organized under the laws of the state of Indiana, representing member real estate agents, and is headquartered in Indianapolis, Indiana.

4.2 Defendant National Association of Realtors, Inc. ("NAR"), is an Illinois not-for-profit Corporation, organized under the laws of the state of Illinois, with headquarters in Chicago, Illinois, and representing member real estate agents through-out the United States of America.

## INTRODUCTION AND STATEMENT OF THE CASE

5. In her capacity as employee of the Defendants, Ms. Vongphachanh has held and holds the title of Public Affairs Officer.

6. Within the scope of her employment, Ms. Vongphachanh is charged with handling matters relating to contacts and activities of the Defendants with the local community, and with legislative and governmental affairs.

7. Within the scope of her employment, Ms. Vongphachanh is charged with representing her employers on external boards and committees and in the local community on matters of public policy, economic development and overall community relations.

8. Within the scope of her employment, Ms. Vongphachanh is charged with protecting the interest of the members of the association for which she works, and also for the real estate industry at large, in legislative matters.

9. Ms. Vongphachanh operates under the direction of the Defendants and each of them.

10. The Plaintiff is a corporation engaged in providing relocation benefit plans to employers, unions, affinity groups and membership organizations which in turn are offered to employees, as union benefits or as affinity benefits.

11. The benefit service plan and the business model by which Plaintiff operates was established in 2008, and is in compliance with all federal and state laws.

12. Plaintiff has consulted with legal counsel and has interacted with the Indiana Real Estate Commissioner, Regulatory Ombudsman for the Indiana Economic Development Corporation

and the U.S. Department of Housing and Urban Development and with other governmental agencies to insure that its operation is in compliance with the law.

13. Plaintiff is one among several companies who operate nationwide and locally which offer this type of benefit.

14. Plaintiff, in promoting their product and services, undertook to schedule a substantial rollout and on-site promotion in northeast Indiana on February 27, 2014.

15. The rollout involved hundreds of hours of preparation time and market testing by agents, employees and contractors of the Plaintiff, and also involved reaching out to and establishing good relationships with local businesses and government officials.

16. Plaintiff has incurred substantial costs and capital outlay in preparation of its rollout.

17. Plaintiff, in its overall business plan, and in its effort to promote the company, had worked with local government officials, who had planned on attending the roll out on February 27, 2014.

18. Among the individuals scheduled to attend the rollout were councilman Kevin Howell, who is an Allen County Councilman, and a Constituent Liaison for United States Congressman Marlin Stuzman. Councilman Howell, in his capacity as the Constituent Liaison, handled the arrangements for Congressman Stuzman to attend the rollout, and to speak in favor of such initiatives as those available through the Plaintiff's business.

19. The rollout was to be a showcase of how the Plaintiff could assist the general public in a way which promoted government policy consistent with those of the politicians scheduled to attend.

20. In the normal course of operation, Plaintiff periodically offers informational sessions explaining how their product and services operate, and how it can benefit individuals, employers, builders, real estate agents and others. These sessions also inform prospective real estate agents interested in qualifying to participate in Plaintiff's services.

21. An informational session that also supported the rollout was conducted on February 19, 2014, in Fort Wayne, Indiana. Ms. Vongphachanh, in the scope of her employment, attended that session.

22. Within hours or minutes of attending the informational session, Ms. Vongphachanh, contacted councilman Howell, and without any basis in fact informed him that Plaintiff was operating an illegal down payment assistance program, and that Plaintiff was an illegal

company. Defendants, acting through their agent Ms. Vongphachanh and or others, also threatened Councilman Howell and stated that if he or congressman Stutzman attended the Plaintiff's rollout, Ms. Vongphachanhe would send out an email blast to local real estate agents and others, informing them that Howell and Stutzman were working with an illegal company.

23. The Defendants, through acts of libel and slander, maligned and defamed the Plaintiff to a sitting member of the United States House of Representatives, a sitting member of the Allen County Council, to parties contracting with Plaintiff, to parties in a business relationship with the Plaintiff, and to the general public, and maliciously and without justification threatened to associate a Congressman and a Councilman with criminal activity if either decided to show support for the work of the Plaintiff.

24. Immediately after Ms. Vongphachanh made the threats to these government officials, they withdrew their support of the Plaintiff's rollout, and refused to attend the same.

25. Plaintiff believes that at least two substantial potential contracts, in which Plaintiff invested substantial time and money, were lost as a direct result of the false accusations of criminal activity which Defendants disseminated to these potential customers.

26. The Defendants were approached by Plaintiff and were asked to issue a written retraction of the false accusations of criminal activity on the part of the Plaintiff.

27. The Defendants refused to issue any type of retraction, and instead condoned the actions of their employee or employees and informed Plaintiff that Ms. Vongphachanh was only doing the job she was paid to do.

28. As a result of the actions and inactions of the Defendants Plaintiffs have suffered and continue to suffer damages.

29. The actions of Ms. Vongphachanh were done within the scope and employment of the Defendants, and Defendants are responsible for the actions of their employee, Ms. Vongphachanh under a *respondeat superior* relationship of the parties.

29.1 IAR, is a trade association, a state board affiliated with NAR, and provides services and represents the interests of state-wide member brokers.

29.2 NAR, is a trade association which establishes policies and standards for over one million individual member brokers throughout the United States, and provides education to these members and the public.

29.3 IAR publishes a newsletter regularly, which is distributed to its members, and possible to the public at large.

29.4 Since the filing of the Plaintiff's original Complaint, Plaintiff has learned that IAR has published a defamatory letter in its newsletter, authored by its staff counsel, in which IAR's counsel directly mentions the Plaintiff's company, and casts doubt as to the propriety of the services being offered by the Plaintiff, identifies laws which Plaintiff is likely violating and disparages Plaintiff to IAR members.

29.5 Since the filing of the Plaintiff's original Complaint, Plaintiff has also learned that NAR has engaged in numerous acts calculated to harm the Plaintiff.

29.6 NAR and IAR members include traditional brokers who are concerned that the activities of companies like that of the Plaintiff, might result in reduced overall commissions for themselves.

29.7 In Plaintiff's initial dealings with NAR, NAR agreed to work with Plaintiff and even agreed to promote its products. However, NAR changed its approach in dealing with Plaintiff and immediately ceased any cooperative efforts with the Plaintiff and instead began a campaign of misinformation to harm the Plaintiff.

29.8 NAR, through their agents and employees, used their contacts with the Department of Housing and Urban Development to provide HUD with false information and to launch and investigation of the Plaintiff, knowing HUD had no oversight of the activities of the Plaintiff.

29.9 After learning that HUD saw no basis for action against Plaintiff, NAR failed to inform other Defendants of this fact, and continued to work with the other Defendants and to provide false and misleading information about the Plaintiff's business and about HUD's involvement resulting injury to the Plaintiff.

29.10 Upstar and Upstar MLS reported to NAR about the activities of Plaintiff, and worked in concert with NAR and IAR to undermine the business success of the Plaintiff through a continued campaign of misinformation calculated to malign the Plaintiff and to cause it harm.

29.11 Defendants orchestrated activity against Plaintiff was intentionally covered in order to deflect any appearance of wrongdoing.

29.12 The Defendants took actions against Plaintiff for the purpose of unfairly and illegally protecting themselves and their members from outside competition.

29.13 The Defendants actions in disparaging Plaintiff, and implementing policies to prevent Plaintiff from entering into the market, amount to a restraint of competition.

29.14 The blocking of Plaintiff from entering into the market and/or driving Plaintiff out of business is fundamentally anti-competitive and harmful to the consuming public.

29.15 The Defendants, individually, collectively or in some combination, banded together to stop Plaintiff from entering into the market before it became a larger threat to their business of collecting commissions on real estate sales.

29.16 The Defendants actions include false and misleading statements which were designed to prevent Plaintiff from providing a critical service to the consuming public and therefore maintaining an exclusive non-competitive environment for their benefit.

29.17 The Defendants have through a combination of acts and by conspiracy, incorporated illegal and suppressive measures to prevent an innovative business model from forming and thriving in the market, and have acted to restrain trade.

29.18 The efforts of the Defendants, whether individually or in some combination of actors, promoted a boycott of Plaintiff's services.

29.19 The efforts of the Defendants, whether individually or in some combination of actors, have had direct anti-competitive effects on the market.

CAUSES OF ACTION

Count I
Libel *Per Se*

30. Plaintiff restates paragraphs 1-29, inclusive, as if fully set forth herein.
31. The false written communications by the Defendants alleging criminal activity on the part of Plaintiff and determinated publicly are libelous and defamatory *per se*.
32. The defamatory communication of the Defendants caused harm to the reputation of the Plaintiff and lowered the position of the Plaintiff in the estimation of the community, and deterred third persons from associating or dealing with the Plaintiff.
33. The defamatory written statements made by Defendants resulted in actual business losses and monetary damages, and Plaintiff is entitled, in addition to nominal damages, to special or compensatory damages as a result of the libelous statements of the Defendants.

34. Defendants' actions against the Plaintiff were intentional, calculated to injure the Plaintiff, grossly negligent and oppressive.

### Count II
### Slander *Per Se*

35. Plaintiff restates paragraphs 1-34, inclusive, as if fully set forth herein.
36. The false oral communications by the Defendants alleging criminal activity on the part of Plaintiff and determinated publicly are slanderous and defamatory *per se*.
37. The defamatory statements of the Defendants caused harm to the reputation of the Plaintiff and lowered the position of the Defendant in the estimation of the community, and deterred third persons from associating or dealing with the Plaintiff.
38. The defamatory oral statements made by Defendants resulted in actual business losses and monetary damages and Plaintiffs are entitled, in addition to nominal damages, to special or compensatory damages as a result of the slanderous statements of the Defendants.
39. Defendants' actions in making false oral statements against the Plaintiff were intentional, calculated to injure the Plaintiff, grossly negligent and oppressive.

### Count III
### Tortious Interference of Contract

40. Plaintiff restates paragraphs 1-39, inclusive, as if fully set forth herein.
41. At the time of the wrongdoing of the Defendants, Plaintiff was a party to several valid contracts.
42. Defendant had actual or constructive knowledge of Plaintiff's contractual relationship with other parties.
43. Defendants, by their actions, induced a breach of such contract or contracts without justification.
44. Defendants' actions resulted in injuries to the Plaintiff.
45. Defendants' actions justify the award of punitive damages to the Plaintiffs.

## Count IV
### Tortious Interference with Business Relationship

46. Plaintiff restates paragraphs 1-45, inclusive, as if fully set forth herein.
47. At the time of the wrongdoing of the Defendants, Plaintiff had established numerous business relationships in the community.
48. Defendant had actual or constructive knowledge of Plaintiff's business relationship with other parties.
49. Defendant, by their actions, intentionally interfered with Plaintiffs business relationships without justification.
50. Defendants' actions resulted in injuries to the Plaintiff.
51. Defendants actions justify the award of punitive damages to the Plaintiffs.

## Count V
### Negligent Training Supervision and Retention

52. Plaintiff restates paragraphs 1-51, inclusive, as if fully set forth herein.
53. Defendant Vongphachanh was assigned numerous duties which exposed her and her employer to extraordinary contact and interaction with the public, the government and local businesses.
54. Defendants owed a duty of care, when dealing with local businesses, not to malign or otherwise adversely and falsely accuse such businesses of operating in a manner contrary to law, which duty was breached and resulted in injury to Plaintiff.
55. Defendants Upstar and Upstar MLS were negligent in training and supervising Ms. Vongphachanh in the proper manner in which to interact with the general public, with local businesses and with government officials.
56. Defendants Upstar and Upstar MLS were negligent in retaining Ms. Vongphachanh as an employee.
57. Defendants' actions resulted in injuries to the Plaintiff.
58. Defendants actions justify the award of punitive damages to the Plaintiffs.

## Count VI
## Punitive Damages

59. Plaintiff restates paragraphs 1-58, inclusive, as if fully set forth herein.
60. Defendants intentionally and with malice, gross negligence, and oppression caused injury to the Plaintiff.
61. In addition to special and compensatory damages, Plaintiff is entitled to recover punitive damages from the Defendants.

## Count VII
## Lanham Act Violations

62.1 Plaintiff restates paragraphs 1-61, inclusive, as if fully set forth herein.
62.2 The Defendants have made false and misleading representations of fact in oral and published statements to the public and to member real estate brokers.
62.3 The misrepresentations made by Defendants are material in that they have deceived or are likely to deceive member brokers and home buyers in whether to deal or contract with Plaintiff.
62.4 Defendants' misrepresentations are material in that they have deceived or have a tendency to deceive a substantial segment of its audience.
62.5 The Defendants placed false or misleading statements in interstate commerce of the United States.
62.6 Plaintiff has been injured as a result of Defendants' misrepresentations which directly diverted sales or potential sales of service Plaintiff provided to the consuming public, and by aerating of goodwill associated with Plaintiff's services.
62.7 Defendants have violated provisions of the Lanham Act §43(a) (15 USCA §1125), entitling Plaintiff to relief under the Act.

## Count VIII
## Sherman Act Violations

62.8   Plaintiff restates paragraphs 1-62.7, inclusive, as if fully set forth herein.

62.9   In the concerted actions of the Defendants, there was a conscious commitment to a common scheme designed to achieve an unlawful objective that constitutes a contract, combination or conspiracy (the "Conspiracy").

62.10  The Conspiracy has existed for several years, and continued through the time the Plaintiff was driven out of business, and may continue to this day to prevent reentry into the market.

62.11  The Conspiracy's unlawful objective was, and may continue to be, to impose unreasonable restraints of trade in state and local real estate markets in which Plaintiff was operating.

62.12  The Conspiracy's unlawful objective was to directly and indirectly inhibit competition in the market, to inhibit innovation in the delivery of information and services to a consuming public, and illegally preserve and protect their own benefit and profit from services.

62.13  The collective action and individual actions of the Defendants deprived Plaintiff of its ability to engage in free enterprise, and harmed and deprived the market generally of free enterprise.

62.14  The anti-competitive acts of the Conspiracy have directly harmed competition and have injured Plaintiff's sales and goodwill in an amount to be determined.

62.15. Defendants have violated provisions of the Sherman Act (15 USCA §1, et. seq.), entitling Plaintiff to relief under the Act.

## Count IX
## Indiana Fair Trade Regulations

62.16. Plaintiff restates paragraphs 1-62.15, inclusive, as if fully set forth herein.

62.17. The actions of the Defendants are in violation of the Indiana Fair Trade Regulations, IND. CODE § 24-1-1-1 et. seq., entitling Plaintiff to relief under the Act.

WHEREFORE, Plaintiffs demand judgment against the Defendants for pecuniary and special damages occasioned by the acts of the Defendants, for exemplary damages, for all statutory damages, for treble damages, for attorney fees, for costs, and for all other relief proper in the premises.

Respectfully submitted,

LAW OFFICE OF GEORGE SISTEVARIS
ATTORNEYS FOR PLAINTIFFS
202 WEST BERRY STREET, SUITE 500
FORT WAYNE, INDIANA 46802
TELEPHONE: (260) 420-0900
FAX: (888) 523-9003
EMAIL: george@sistevaris.com

BY: _____
GEORGE SISTEVARIS
I.D. #13770-02

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the above and foregoing has been served on all attorneys of record, this 1 day of October, 2015, to:

E. Franklin Hill, Jr., Esq.
8436 Cerco Court
Fort Wayne, Indiana 46815

_____
GEORGE SISTEVARIS

C:\gs\Workforce Relo\Complaint Amended 3.wpd.   11